**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Juan Carlos HERNANDEZ, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 30, 2006.

Filed Jan. 12, 2007.

---

Amy J. Johnston, Jason R. Lewis, Franklin, for appellant.

Schellart H. Los, Assistant District Attorney, Franklin, for Commonwealth, appellee.

BEFORE: ORIE MELVIN, McCAFFERY, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Juan Carlos Hernandez appeals from the judgment of sentence entered upon his convictions of criminal trespass and simple assault. *See* 18 Pa.C.S. §§ 3503(a), 2701(a), respectively. Hernandez contends that since he is indigent, the trial court violated his due process and equal protection rights when it denied his post-sentence motion to modify costs and charged him with the costs of the prosecution's mental health expert. Specifically, Hernandez asserts that 16 P.S. section 1403, the statute that requires a convicted defendant to pay the costs of prosecution, is constitutionally infirm under *Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974). After careful review, we conclude that 16 P.S. section 1403 passes constitutional muster, because the procedural safeguards of Pa.R.Crim.P. 706 ensure that an indigent defendant will be afforded an opportunity to prove his financial inability to pay the costs of prosecution before being committed to prison. Accordingly, we affirm the trial court's order.

¶ 2 On June 14, 2005, a jury found Hernandez "guilty but mentally ill" for criminal trespass and simple assault, after hearing extensive testimony from Hernandez's expert, Dr. Charles Romero, and the Commonwealth's expert, Dr. Robert Wettstein, regarding Hernandez's mental condition. *See* 18 Pa.C.S. § 314 (Guilty but mentally ill). On August 26, 2005, the trial court conducted a hearing pursuant to 42 Pa. C.S. section 9727 and determined that at the time of sentencing, Hernandez was "severely mentally disabled and in need of treatment." Trial Court Opinion (T.C.O.), 12/27/05, at 1. The trial court sentenced Hernandez to nine years of probation, total fines of $425, and all the costs of prosecution under 16 P.S. section 1403. When the Clerk of Courts assessed the costs of prosecution to Hernandez, the clerk included a

$7,008.50 bill from the Commonwealth for the services of its mental health expert, Dr. Wettstein. On September 2, 2005, Hernandez filed a post-sentence motion seeking to dismiss the costs of the Commonwealth's expert on the ground that the trial court failed to make a determination of his ability to pay the costs of prosecution. In his motion, Hernandez argued that 16 P.S. section 1403, which allows for the expenses incurred by the district attorney to be part of the prosecution costs, is unconstitutional under *Fuller*. On December 22, 2005, the trial court denied Hernandez's post-sentence motion, charged him with the costs of the Commonwealth's mental health expert, and declared 16 P.S. section 1403 constitutional.

¶ 3 Hernandez appeals to this Court, raising the following question for our review:

1. Did the trial court err in denying the Appellant's post sentence motion and charging him with the costs of the prosecution's mental health expert?

Brief for Appellant at 4.

 ¶ 4 When an appellant challenges the constitutionality of a statute, he or she presents this Court with a question of law. *See Commonwealth v. Means*, 565 Pa. 309, 773 A.2d 143, 145 (2001). Our consideration of questions of law is plenary. *See id.* Moreover,

> there is a strong presumption in the law that legislative enactments do not violate the constitution.... [T]here is a heavy burden of persuasion upon one who challenges the constitutionality of a statute. As a matter of statutory construction, we presume the "General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth." A statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitu-

tion; all doubts are to be resolved in favor of finding constitutionality.

*Commonwealth v. Forbes*, 867 A.2d 1268, 1276–77 (Pa.Super.2005) (citation omitted).

¶ 5 The statute at issue in this case, 16 P.S. section 1403, states:

> All necessary expenses incurred by the district attorney or his assistants or any office directed by him in the investigation of crime and the apprehension and prosecution of persons charged with or suspected of the commission of crime, upon approval thereof by the district attorney and the court, shall be paid by the county from the general funds of the county. In any case where a defendant is convicted and sentenced to pay the costs of prosecution and trial, the expenses of the district attorney in connection with such prosecution shall be considered a part of the costs of the case and be paid by the defendant.

16 P.S. § 1403.

¶ 6 In support of his sole question on appeal, Hernandez asserts that 16 P.S. section 1403 is inadequate to protect his due process and equal protection rights. Brief for Appellant at 8. Particularly, Hernandez claims that the statute is unconstitutional under *Fuller*, because it does not require the sentencing court to take into account whether a defendant has the ability to pay the costs of prosecution. Brief for Appellant at 7–9. In *Fuller*, the Supreme Court of the United States considered whether an Oregon statute could constitutionally require a convicted defendant "to repay to the [s]tate the costs of providing him with effective representation of counsel, when he is indigent at the time of the criminal proceeding[,] but subsequently acquires the means to bear the costs of his legal defense." 417 U.S. at 41, 94 S.Ct. 2116. The Court noted that the Oregon statute required the trial court to

consider the defendant's ability to pay his court-appointed attorney costs at three different points in the process. First, the statute mandated that the court decide whether the defendant "is or will be able to pay" the fees at sentencing, taking into account "the financial resources of the defendant and the nature of the burden that payments of costs will impose." *Id.* at 45, 94 S.Ct. 2116 (citation omitted). Second, if the court determined that a defendant is or will be able to pay costs, the defendant could later petition the court for remission of the fee obligation at any point after sentencing on the ground that payment "will impose manifest hardship on the defendant or his immediate family[.]" *Id.* at 45–46, 94 S.Ct. 2116. Third, if a defendant was ordered to pay costs and then failed to make payment, the defendant was entitled to a hearing and could avoid imprisonment or a finding of contempt, by demonstrating that "his default was not attributable to an intentional refusal to obey the order of the court or to a failure on his part to make a good faith effort to make the payment[.]" *Id.* at 46, 94 S.Ct. 2116 (citation omitted). Ultimately, the Supreme Court of the United States concluded that these features of the Oregon statute rendered it constitutional under the equal protection clause and decided that the statute did not "chill" the defendant's exercise of his sixth amendment right to counsel. *See id.* at 50, 54, 94 S.Ct. 2116.

¶ 7 In *Fuller*, the Supreme Court of the United States did not expressly rule that in order to be constitutional, a state's recoupment statute must provide for an assessment of the defendant's ability to make payment at sentencing, after sentencing, and before imprisonment. The Court, however, emphasized that Oregon's statute "is tailored to impose an obligation to pay only upon those with a foreseeable ability to meet it, and to enforce that obligation only against those who actually become able to meet it without hardship." *Id.* at 54, 94 S.Ct. 2116. As the Court stated:

> [T]he recoupment statute is quite clearly directed only at those convicted defendants who are indigent at the time of the criminal proceedings against them but who subsequently gain the ability to pay the expenses of legal representation. Defendants with no likelihood of having the means to repay are not put under even a conditional obligation to do so, and those upon whom a conditional obligation is imposed are not subjected to collection procedures until their indigency has ended and no "manifest hardship" will result.

*Id.* at 46, 94 S.Ct. 2116. At a minimum, then, *Fuller* requires a procedural safeguard that is designed to protect defendants from commitment if they are unable to repay to the state their court-appointed attorney's costs. *See, e.g, Alexander v. Johnson*, 742 F.2d 117, 124 (4th Cir.1984); *Olson v. James*, 603 F.2d 150, 155 (10th Cir.1979); *United States v. Bracewell*, 569 F.2d 1194, 1199–1200 (2d Cir.1978) (finding that the district court was required under *Fuller* to conduct an appropriate inquiry into the defendant's financial position).

¶ 8 In this case, Hernandez argues that he currently "does not have the capacity" to repay the prosecution's mental health expert's fees. Brief for Appellant at 8. *Fuller* mandates that 16 P.S. section 1403 contain a procedural device that ensures Hernandez will not be imprisoned if he is financially unable to pay these costs. *See Ohree v. Commonwealth*, 26 Va.App. 299, 494 S.E.2d 484, 490 (1998) (stating that *Fuller's* doctrine is not limited to court-appointed attorney's fees, but applies to all "other costs of prosecution."). On its face, 16 P.S. section 1403 does not possess any of *Fuller's* procedural protections, and a plain reading of the statute suggests that

it is mandatory that the defendant repay the expenses incurred by the district attorney. *See* 16 P.S. section 1403 ("... the expenses of the district attorney in connection with such prosecution shall be considered a part of the costs of the case and be paid by the defendant."). Although 16 P.S. section 1403 does not expressly include any provisions providing an indigent defendant with an inquiry into his/her ability to pay, this does not mean that the statute is constitutionally infirm *per se. See State v. Blank*, 131 Wash.2d 230, 930 P.2d 1213, 1218 (1997) (concluding that *Fuller's* procedural requirements "need not be specifically enumerated in the statute so long as the courts adhere to those requirements."). After review, we find that Pa.R.Crim.P. 706 is an adequate procedural tool that supplants 16 P.S. section 1403 and satisfies the constitutional requirements of *Fuller*, by ensuring that an indigent will be afforded an opportunity to prove his financial inability to pay the costs of prosecution before being sentenced to prison.

¶ 9 To enforce an order for reimbursement of the costs of prosecution pursuant to 16 P.S. section 1403, the trial court must necessarily comply with Pa.R.Crim.P. 706. A defendant cannot be committed to prison for failing to pay the costs of prosecution unless the trial court follows the procedure of Pa.R.Crim.P. 706, which states:

**Rule 706. Fines or Costs**

(A) A court shall not commit the defendant to prison for failure to pay a fine or costs unless it appears after hearing that the defendant is financially able to pay the fine or costs.

(B) When the court determines, after hearing, that the defendant is without the financial means to pay the fine or costs immediately or in a single remittance, the court may provide for payment of the fines or costs in such installments and over such period of time as it deems to be just and practicable, taking into account the financial resources of the defendant and the nature of the burden its payments will impose, as set forth in paragraph (D) below.

(C) The court, in determining the amount and method of payment of a fine or costs shall, insofar as is just and practicable, consider the burden upon the defendant by reason of the defendant's financial means, including the defendant's ability to make restitution or reparations.

(D) In cases in which the court has ordered payment of a fine or costs in installments, the defendant may request a rehearing on the payment schedule when the defendant is in default of a payment or when the defendant advises the court that such default is imminent. At such hearing, the burden shall be on the defendant to prove that his or her financial condition has deteriorated to the extent that the defendant is without the means to meet the payment schedule. Thereupon the court may extend or accelerate the payment schedule or leave it unaltered, as the court finds to be just and practicable under the circumstances of record. When there has been default and the court finds the defendant is not indigent, the court may impose imprisonment as provided by law for nonpayment.

Pa.R.Crim.P. 706.

¶ 10 After comparing the procedural mechanisms of Pa.R.Crim.P. 706 and the Oregon statute that the Supreme Court of the United States held to be valid in *Fuller*, we conclude that they are strikingly similar. Both laws provide a defendant with a device to avoid imprisonment upon

default, by giving him/her the opportunity to demonstrate an inability to make payment at an evidentiary hearing. The Oregon statute and Pa.R.Crim.P. 706 also allow a defendant to request a hearing when default is imminent; the Oregon statute lets a defendant prove his/her indigency before a default hearing is held, while Pa.R.Crim.P. 706 permits a defendant to demonstrate financial inability either after a default hearing or when costs are initially ordered to be paid in installments. The only notable substantive difference is that the statute in *Fuller* provides for a mandatory hearing on financial status at the time of sentencing and Pa.R.Crim.P. 706 does not. *Compare Fuller,* 417 U.S. at 43, 94 S.Ct. 2116 (citing Ore.Rev.Stat. § 161.665(3)), *with* Pa.R.Crim.P. 706(D). The Supreme Court, however, did not state that *Fuller* requires a trial court to assess the defendant's financial ability to make payment at the time of sentencing. In interpreting *Fuller,* numerous federal and state jurisdictions have held that it is not constitutionally necessary to have a determination of the defendant's ability to pay prior to or at the judgment of sentence. These decisions often conclude that the constitutional concerns of *Fuller* are only implicated when sanctions are sought for nonpayment, *i.e.* imprisonment. *See, e.g., United States v. Hutchings,* 757 F.2d 11, 14–15 (2d Cir.1985); *Blank,* 930 P.2d at 1220; *State v. Albert,* 899 P.2d 103, 111–112 (Alaska 1995) (adopting the view that "no prior determination of a defendant's ability to pay is required in systems where jail is a possible consequence of nonpayment, so long as there is an opportunity to establish inability to pay before the jail sanction is imposed.").

¶ 11 For example, in *Hutchings,* the defendant argued that the trial court's imposition of the costs of prosecution under 28 U.S.C. section 1918 was invalid under *Fuller* because he was indigent. *See* 757 F.2d at 14. The Court of Appeals for the Second Circuit decided that the costs of prosecution could be imposed upon an indigent defendant as part of sentencing. *See id.* at 14. The court interpreted *Fuller* to stand for the proposition that "[f]inancial obligations may be imposed upon a defendant who is indigent at the time of sentencing but subsequently acquires the means to discharge his obligations." *Id.* at 14 (citation omitted). The court ultimately rejected the defendant's *Fuller* challenge and concluded that the defendant can only raise a constitutional objection on the ground of his indigence when "the government seeks to enforce the court's order for costs ... [and] the defendant [is] unable, through no fault of his own, to comply." *Id.* at 14–15 (citation and internal quotation marks omitted).

¶ 12 We find the above-mentioned case law persuasive and conclude that *Fuller* compels a trial court only to make a determination of an indigent defendant's ability to render payment before he/she is committed. As such, any distinction between Pa.R.Crim.P. 706 and the Oregon statute that the Supreme Court upheld in *Fuller* is legally insignificant. Consequently, Pa.R.Crim.P. 706 works to enforce the duty of paying costs "only against those who actually become able to meet it without hardship" and satisfies the requirements that are enunciated in *Fuller.* 417 U.S. at 54, 94 S.Ct. 2116. Therefore, because Pa.R.Crim.P. 706 contains the essential characteristics of the Oregon statute that was upheld in *Fuller* and ensures that an indigent will not be committed on the basis of his poverty, we conclude that 16 P.S. section 1403 is constitutional on its face and as applied to the particular facts of this case.

¶ 13 For the foregoing reasons we affirm the trial court's judgment of sentence.

¶ 14 Judgment of sentence **AF-FIRMED.**