J-S45024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUS TROY PORTER | : | |
| | : | |
| Appellant | : | No. 1644 EDA 2019 |

Appeal from the Judgment of Sentence Entered March 7, 2019,
in the Court of Common Pleas of Montgomery County,
Criminal Division at No(s):  CP-46-CR-0006102-2017.

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JANUARY 12, 2021**

Joshus Troy Porter appeals the judgment of sentence imposed following his convictions for burglary, criminal trespass, unlawful restraint, simple assault, recklessly endangering another person, strangulation-throat/neck, strangulation-nose/mouth, and harassment.[1]  We affirm.

The trial court set forth the relevant factual and procedural history as follows:

> On May 14, 2017, [Porter's] ex -girlfriend, Angela Fillman, received forty-seven (47) phone calls and multiple text messages from [Porter].  Many of these messages and phone calls involved [Porter] asking Ms. Fillman to get back with him.  During one of these phone calls, [Porter] requested a ride from Ms. Fillman but she refused.  At 11:52 p.m., officers were dispatched to an apartment in Royersford, PA due to a report of a domestic incident in process.  During their response to the scene, officers

---

[1] **See** 18 Pa.C.S.A. §§ 3502(a)(1)(ii), 3503(a)(1)(ii), 2902(a)(1), 2701(a)(1), 2705, 2718(a)(1), 2718(a)(2), 2709(a)(1).

encountered Ms. Fillman, in the police station parking lot across the street from her apartment. Ms. Fillman stated that she was asleep in her bedroom when she was awoken by the sound of breaking glass. Ms. Fillman subsequently walked into the doorway of her bedroom where she observed [Porter] standing inside the living room. [Porter] had entered the third floor apartment by climbing the fire escape and breaking a locked window.

[Porter] began a verbal argument with [Ms. Fillman] regarding their relationship. Ms. Fillman attempted to open the door to leave her apartment, but [Porter] pushed it shut. [Porter] indicated he was going to kill himself and took possession of a knife from Ms. Fillman's kitchen. [Porter] stabbed himself in the left forearm with the knife, which caused a significant amount of blood loss. Ms. Fillman grabbed a towel and placed it around [Porter's] arm and took possession of the knife. Ms. Fillman subsequently attempted to run but [Porter] stepped in front of the door so she could not open it and pushed her to the floor. [Porter] began to rub his blood all over himself and leaned over Ms. Fillman so it would drip on her. [Porter] began pacing back and forth in the apartment and entered the kitchen. Ms. Fillman took this opportunity to exit the apartment.

After leaving the apartment, Ms. Fillman ran down a hallway towards a flight of stairs. [Porter] pursued Ms. Fillman and pushed her down the steps head first, causing her to strike her knee against the landing at the bottom of the stairs. Ms. Fillman's head also struck a baseboard resulting in a laceration which required stitches and a broken nose. Following her fall, Ms. Fillman saw [Porter] at the top of the stairs staring at her and pacing back and forth. Ms. Fillman stood up and ran outside into an alleyway but could feel [Porter] grabbing the back of her shirt when she opened the door to exit the apartment complex. Once she was outside, Ms. Fillman began screaming for help but [Porter] placed her in a choke hold and placed one hand over her mouth to stop her from screaming.

[Porter] subsequently pushed Ms. Fillman to the ground and put one hand over her neck and the other hand over her mouth and nose. [Porter] placed pressure on the hand grabbing Ms. Fillman's neck so she was not able to breathe. Ms. Fillman subsequently began losing consciousness. When she regained consciousness, Ms. Fillman saw [Porter] standing over her. Ms. Fillman stood up and ran to the street and saw [Porter] run away

- 2 -

from her. Ms. Fillman ran to the police station parking lot and called 911 with her cell phone. Responding officers called an ambulance for Ms. Fillman and later searched the apartment but were unsuccessful in finding [Porter] or the knife. Authorities eventually apprehended [Porter] in Chester County, PA on July 2, 2017.

On July 10-11, 2018, the court held a jury trial in which the jury found [Porter] guilty of the charges referenced above. Following the jury's ruling, the court found [Porter] guilty of the summary charge [of harassment]. On November 5, 2018, the court imposed . . . an aggregate sentence of one hundred and fifty-four (154) to three hundred and eight (308) months of imprisonment (twelve and one-half (12-1/2) to twenty-five (25) years).

On November 14, 201[8], [Porter] filed timely post-sentence motions. . . . On March 7, 2019, the court held a hearing on [Porter's] post–sentence motions. That same date, the court determined a modification of [Porter's] sentence was warranted in light of the issues raised . . ., and imposed a new sentence in which the criminal trespass charge merged with the burglary charge and which vacated the [sentences imposed on the] unlawful restraint, simple assault recklessly endangering another person, and harassment charges. [Porter's] modified sentence consisted of forty-eight (48) to ninety-six (96) months of imprisonment with respect to the burglary charge and forty-eight (48) to ninety-six (96) months of imprisonment with respect to each strangulation charge. The court ran these sentences consecutively, resulting in an aggregate sentence of one hundred and forty-four (144) to two hundred and eighty-eight (288) months of imprisonment (twelve (12) to twenty-four (24) years). On March 18, 2019, [Porter] filed timely post-sentence motions which the court denied on May 6, 2019.

Trial Court Opinion, 1/8/20, at 2-4.

Porter filed a timely notice of appeal. Both Porter and the trial court complied with Pa.R.A.P. 1925.

Porter raises the following issues for our review:

1. Did the sentencing court violate the [d]ouble [j]eopardy clauses of the United States and Pennsylvania Constitutions by sentencing Mr. Porter on two counts of strangulation for one choking incident?

2. Did the court below issue a sentence that is clearly unreasonable and manifestly excessive by doubling at re-sentencing the aggregate sentences of two strangulation counts that arise from one incident and without giving due consideration to mitigating factors?

3. Was the evidence sufficient to sustain a conviction of burglary where the facts don't establish an intent to commit a crime that is contemporaneous with the entry into the premises?

4. Did the trial court err in assigning costs without taking into consideration Mr. Porter's inability to pay?

Porter's Brief at xi.

In his first issue, Porter contends that his convictions for two counts of strangulation arising from the same criminal episode violate the double jeopardy clauses of the United States and Pennsylvania constitutions. An appeal grounded in double jeopardy raises a question of constitutional law. *See Commonwealth v. Kearns*, 70 A.3d 881, 884 (Pa. Super. 2013). This Court's scope of review in making a determination on a question of law is plenary. *Id*. As with all questions of law, the appellate standard of review is *de novo*. *Id*.

The prohibition against double jeopardy was designed to protect individuals from being tried or punished more than once for the same allegation or offense. *See Commonwealth v. Miller*, 198 A.3d 1187, 1191 (Pa. Super. 2018). The Fifth Amendment of the United States Constitution

provides, in relevant part, that no person shall "be subject for the same offen[s]e to be twice put in jeopardy of life or limb [.]" U.S. Const. amend. V. Likewise, Article I, § 10 of the Pennsylvania Constitution provides that "[n]o person shall, for the same offense, be twice put in jeopardy of life or limb." Pa. Const. art. I, § 10.

Pursuant to the Pennsylvania Crimes Code, "A person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by: (1) applying pressure to the throat or neck; or (2) blocking the nose and mouth of the person." 18 Pa.C.S.A. § 2718(a)(1), (2).

Porter challenges his conviction for a second count of strangulation. He contends that Ms. Fillman was choked only once, but he was convicted twice for strangulation. He argues that the Commonwealth pursued two counts of strangulation on the basis that Ms. Fillman's breathing was impeded by both pressure to the throat or neck under subsection (a)(1), and blocking the nose and mouth under subsection (a)(2). Porter maintains that, although the strangulation statute permits the offense to be proven in different ways, it does not contemplate two separate offenses for a singular incident of choking. Porter claims that the plain language of section 2718 makes clear that the statute establishes a singular crime. He argues that the use of the operative word "or" between subsections (a)(1) and (a)(2) demonstrates that the

legislature intended one unifying offense with alternate means of proving one of the elements of that singular offense.

Initially, we must determine whether Porter preserved this issue for our review. Generally speaking, issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). The issue preservation requirement ensures that the trial court that hears a dispute has had an opportunity to consider the issue, which in turn advances the orderly and efficient use of our judicial resources, and provides fairness to the parties. **See Commonwealth v. Hill**, 238 A.3d 399 (Pa. 2020).

Here, Porter filed two post-sentence motions, one following his original sentencing, and another following his resentencing. Porter raised no double jeopardy claim in his first post-sentence motion. In his second post-sentence motion, Porter raised a double jeopardy claim, but only with respect to the **sentence** imposed for the second strangulation count.[2] Porter also challenged the **sentence** imposed for the second strangulation count in his concise statement, where he claimed, on double jeopardy grounds, it should

---

[2] In his second post-sentence motion, Porter framed his double jeopardy claim as follows: "The increased sentence on Count 10 also raises [d]ouble [j]eopardy concerns. **See United States v. Benz**, 282 U.S. 304, 308 (1931) ('[I]f, after judgment has been rendered on the conviction, and the sentence of that judgment executed on the criminal, he can be again sentenced on that conviction to another and different punishment, or to endure the same punishment a second time, is the [Fifth Amendment] constitutional restriction [on Double Jeopardy] of any value?'); **see also, United States v. Corson**, 449 F .2d 544, 550 (3d Cir. 1971)." Post-Sentence Motion, 3/18/19, at 3-4.

- 6 -

merge with the first count of strangulation for sentencing purposes. ***See*** Concise Statement, 3/18/19, at 2. In response, the trial court addressed Porter's double jeopardy claim with respect to the appropriateness of merger of his ***sentence*** for the second strangulation count. ***See*** Trial Court Opinion, 1/8/20, at 10-12. However, in his appellate brief, Porter challenges his ***conviction*** for the second strangulation count. Porter did not raise this claim in either his post-sentence motions or in his concise statement.

Our Supreme Court recently drew a distinction between a double jeopardy challenge to a second ***conviction*** for the same offense as opposed to a challenge to the ***sentence*** imposed for the second conviction. In ***Hill***, the defendant was convicted of two counts of DUI-general impairment arising from the same incident. Hill did not raise a double jeopardy claim in the trial court. On appeal, he claimed for the first time that his second DUI conviction and sentence for a single act of DUI violated double jeopardy protections. The High Court ruled that Hill waived his claim concerning his second DUI ***conviction*** as he failed to preserve that issue below; however, he could pursue his challenge to his second ***sentence*** for DUI because it implicated the legality of his sentence, rendering that part of his claim non-waivable. 238 A.3d at *19.

Here, as Porter did not challenge his second conviction for strangulation in the trial court, he failed to preserve that claim for our review. Thus, his first issue is waived.

In his second issue, Porter challenges the discretionary aspects of the sentence imposed for the second count of strangulation. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). Prior to reaching the merits of a discretionary sentencing issue, this Court conducts a four-part analysis to determine:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.[A.] § 9781(b).

*Id*. (citation omitted). When an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. *Commonwealth v. Yanoff*, 690 A.2d 260, 267 (Pa. Super. 1997); *see also Commonwealth v. Tuladziecki*, 522 A.2d 17, 18 (Pa. 1987); 42 Pa.C.S.A. § 9781(b).

In the instant case, Porter filed a timely notice of appeal, preserved his discretionary sentencing claims in a timely post-sentence motion, and included in his appellate brief a separate Rule 2119(f) statement. As such, he is in technical compliance with the requirements to challenge the discretionary aspects of his sentence. *See Commonwealth v. Rhoades*, 8 A.3d 912, 916 (Pa. Super. 2010). Thus, we will proceed to determine whether Porter has presented a substantial question for our review.

The determination of whether a particular issue constitutes a substantial question must be evaluated on a case-by-case basis. However, we will be inclined to allow an appeal where an appellant advances a colorable argument that the trial judge's actions were: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. *See Commonwealth v. Roden*, 730 A.2d 995, 997 (Pa. Super. 1999). We cannot look beyond the statement of questions presented and the prefatory Pa.R.A.P. 2119(f) statement to determine whether a substantial question exists. *See Commonwealth v. Barnes*, 167 A.3d 110, 123 (Pa. Super. 2017).

Moreover, in passing upon a Rule 2119(f) statement, this Court has held that:

> The Rule 2119(f) statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the Code is violated (*e.g.*, the sentence is outside the guidelines and the court did not offer any reasons either on the record or in writing, or double-counted factors already considered). Similarly, the Rule 2119(f) statement must specify what fundamental norm the sentence violates and the manner in which it violates that norm (*e.g.*, the sentence is unreasonable or the result of prejudice because it is 500 percent greater than the extreme end of the aggravated range).

*Commonwealth v. Goggins*, 748 A.2d 721, 727 (Pa. Super. 2000) (*en banc*). A failure by an appellant to articulate a sufficient Rule 2119(f) statement along with an objection from the Commonwealth will result in this Court's preclusion from considering the issue. *See Commonwealth v. Karns*, 50 A.3d 158, 166 (Pa. Super. 2012); *see also Commonwealth v.*

***Dodge***, 77 A.3d 1263, 1271 (Pa. Super. 2013) (disapproving of the appellant's failure to indicate where his sentences fell in the sentencing guidelines, and what provision of the sentencing code was violated); ***Commonwealth v. Bullock***, 868 A.2d 516, 529 (Pa. Super. 2005) (concluding that the appellant failed to raise a substantial question as to his claim of inadequate consideration of mitigating factors where he did not explain in his Rule 2119(f) what specific provision of the sentencing code or fundamental norm underlying the sentencing process had been violated).

Porter's Rule 2119(f) statement primarily consists of boilerplate legal precedent with little discussion of his specific discretionary sentencing claims. Porter asserts that the sentencing court imposed a manifestly excessive and unreasonable sentence on the strangulation counts "because it is patently unreasonable to impose consecutive sentences where the same narrow facts charged proved both crimes." Porter's Brief at 10. He further claims that "consecutive sentencing on the strangulation count is also excessive where the counts were only made to run consecutively following a successful post-sentence motion and the sentencing court did not take into account mitigating factors." ***Id***.[3]

_____

[3] In his brief, Porter discusses other ways in which the trial court allegedly abused its sentencing discretion, such as its consideration of an impermissible factor. However, as this claim was not raised in Porter's Rule 2119(f) statement, he failed to preserve it for our review. Thus, we will not consider it.

Notably, in his rule 2119(f) Statement, Porter does not specify where his strangulation sentences fall in relation to the sentencing guidelines. Nor does he point to any specific provision of the Sentencing Code or fundamental norm underlying the sentencing process that the trial court ostensibly violated in imposing the strangulation sentences. However, the Commonwealth has not objected to these deficiencies.

Porter's claim that his strangulation sentences are excessive due to the trial court's failure to consider mitigating factors fails to raise a substantial question. **See Commonwealth v. Lewis**, 911 A.2d 558, 567 (Pa. Super. 2006) (holding that, generally, an allegation that a sentencing court failed to consider or did not adequately consider certain mitigating factors does not raise a substantial question that the sentence was inappropriate); **see also Commonwealth v. Mobley**, 581 A.2d 949, 952 (Pa. Super. 1990) (holding that a claim that the sentencing court failed to take into consideration the defendant's rehabilitative needs and was manifestly excessive did not raise a substantial question where the sentence was within the statutory limit and the sentencing guidelines).[4]

---

[4] We are mindful that a substantial question is raised where an appellant alleges the sentencing court erred by imposing an aggravated range sentence without consideration of mitigating circumstances. **See Commonwealth v. Bowen**, 55 A.3d 1254, 1263 (Pa. Super. 2012). However, in the instant matter, Porter concedes that his strangulation sentences fall within the standard range of the sentencing guidelines. **See** Porter's Brief at 23.

With regard to the imposition of consecutive sentences, the court has discretion under 42 Pa.C.S.A. § 9721 to impose sentences consecutively or concurrently and, ordinarily, a challenge to this exercise of discretion does not raise a substantial question. Instead,

> [T]he imposition of consecutive rather than concurrent sentences will present a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.
>
> [An appellant] may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

*Commonwealth v. Swope*, 123 A.3d 333, 338-39 (Pa. Super. 2015) (citations and quotations omitted). Giving Porter the benefit of the doubt as to whether his excessiveness claim based on the consecutive nature of his strangulation sentences sufficiently raises a substantial question for our consideration, we will address the merits of that claim.

Our standard of review of a sentencing claim is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing court, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion, which in this context, is not shown merely to be an error in judgment; rather the appellant must establish by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shull*, 148 A.3d 820, 832 (Pa. Super. 2016).

- 12 -

Porter contends that the trial court abused its discretion in imposing consecutive sentences on his two counts of strangulation. He claims that the facts of this case render consecutive sentences on two counts of strangulation unjustified, excessive, and patently unreasonable. Porter points out that the sentencing court originally imposed concurrent sentences for the two strangulation counts; however, his original sentence was illegal, and therefore had to be vacated and modified by the court to merge certain other convictions for sentencing purposes. Porter explains that, upon resentencing, the trial court ordered his strangulation sentences to be served consecutively rather than concurrently. While Porter acknowledges that both of his strangulation sentences are within the standard range of the sentencing guidelines, he claims that "[e]ven when the application of the guidelines is not at issue, sentencing courts can abuse their discretion by running smaller sentences concurrently." Porter's Brief at 23.

Porter maintains that, at resentencing, the prosecution introduced no new facts to justify an increase in the term of incarceration on the two strangulation counts. He argues that, "[t]he **only** factor informing the re-sentencing on the two strangulation counts was the legal necessity of vacating and merging improperly imposed sentences on other counts." **Id**. at 24 (emphasis in original). Porter claims that the fact that the sentencing court improperly over-sentenced him in the first instance should not justify doubling the two strangulation sentences at resentencing. He argues that "[p]reserving

the aggregate term of an illegal sentence by doubling the sentences of otherwise-resolved counts contravenes the notions of justice." ***Id***. at 25.

Porter seems to attribute the trial court's decision to impose consecutive strangulation sentences upon resentencing to a vindictiveness on the part of the trial court due to Porter's successful challenge to the legality of his original sentence. However, this Court has ruled that a defendant may not maintain a vindictiveness claim where the aggregate sentence remains the same upon resentencing. ***See Commonwealth v. Barnes***, 167 A.3d 110, 125 (Pa. Super. 2017) (*en banc*) (holding that a trial court's resentencing did not rise to vindictiveness because the trial court sought to preserve the integrity of the original sentencing scheme by imposing the same aggregate sentence); ***see also Commonwealth v. Vanderlin***, 580 A.2d 820, 831 (Pa. Super. 1990) (recognizing authority of the trial court, after reducing sentence on one count to accord with the law, to impose greater sentence on another count in order to insure appellant remained in prison for a certain length of time). Here, as Porter's aggregate sentence was ***reduced*** upon resentencing from twelve and one-half to twenty-five years to a lesser sentence of twelve to twenty-four years, he cannot maintain a vindictiveness claim.

Moreover, preserving the integrity of a prior sentencing scheme is a legitimate sentencing concern. ***See Barnes***, 167 A.3d at 124; ***see also Commonwealth v. Walker***, 568 A.2d 201, 205 (Pa. Super. 1989) (holding that upon resentencing, a court has a valid interest in preserving the integrity

of a prior sentencing scheme). Whether resentencing is the result of reversal of one or more convictions or vacation of an illegal sentence, the trial court has the same discretion and responsibilities in resentencing. ***Commonwealth v. McHale***, 924 A.2d 664, 667 (Pa. Super. 2007), *overruled in part on other grounds as stated in* ***Commonwealth v. Robinson***, 931 A.2d 15 (Pa. Super. 2007). Upon resentencing, a trial court properly may resentence a defendant to the ***same*** aggregate sentence to preserve its original sentencing scheme, even where certain convictions have been reversed. ***See Barnes***, 167 A.3d at 124. Indeed, "in most circumstances, a judge can duplicate the effect of the original sentencing plan by adjusting the sentences on various counts so that the aggregate punishment remains the same." ***Walker***, 568 A.2d at 206; ***see also McHale***, 924 A.2d 664 (upholding trial court's resentencing where, in order to maintain the same total aggregate sentence as originally imposed, the trial court increased the overall sentence on the surviving counts when convictions on the most serious charges had been reversed based on insufficient evidence); ***Commonwealth v. Bartrug***, 732 A.2d 1287 (Pa. Super. 1999) (noting that a resentence of seven and one-half to fifteen years for burglary was lawful after not receiving a sentence for burglary and having been given previously the same sentence for theft by unlawful taking).

Here, Porter was not the victim of a vindictive sentence on the part of the trial court, as his aggregate sentence upon resentencing was less than his

original sentence. Stated differently, the trial court's resentencing did not rise to vindictiveness because the trial court here sought to preserve the integrity of the original sentencing scheme by imposing nearly the same aggregate sentence. *See Barnes*, 167 A.3d at 124 (holding that appellant was not the victim of a vindictive sentence on the part of the trial court, as his aggregate sentence after remand remained the same); *see also Commonwealth v. Vanderlin*, 580 A.2d 820, 831 (Pa. Super. 1990) (recognizing authority of the trial court, after reducing sentence on one count to accord with the law, to impose greater sentence on another count in order to insure appellant remained in prison for a certain length of time). Nor has Porter convinced us that this case involves circumstances where the application of the sentencing guidelines would be clearly unreasonable. *See Swope*, *supra*. Accordingly, Porter is not entitled to relief on his second issue.

In his third issue, Porter challenges the sufficiency of the evidence supporting his burglary conviction. When reviewing such a challenge, our standard of review is *de novo*. *Commonwealth v. Rushing*, 99 A.3d 416, 420-421 (Pa. 2014). Our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner. *Id*. "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Commonwealth v. Widmer*, 744

A.2d 745, 751 (Pa. 2000). The Commonwealth may sustain its burden by means of wholly circumstantial evidence. *Commonwealth v. Dix*, 207 A.3d 383, 390 (Pa. Super. 2019). Further, the trier of fact is free to believe, all, part, or none of the evidence presented when making credibility determinations. *Commonwealth v. Beasley*, 138 A.3d 39, 45 (Pa. Super. 2016). "[T]his Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed." *Commonwealth v. Smith*, 146 A.3d 257, 261 (Pa. Super. 2016).

The burglary offense of which Porter was convicted provides as follows: "[a] person commits the offense of burglary if, with the intent to commit a crime therein, the person: . . . enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present." 18 Pa.C.S.A. § 3502(a)(1)(ii); *see also Commonwealth v. Cooper*, 941 A.2d 655, 666 (Pa. 2007) (holding that the Commonwealth is required to prove beyond a reasonable doubt that the offender entered the premises with the contemporaneous intent of committing a crime, at a time when he was not licensed or privileged to enter).

However, in pursuing a conviction for burglary, the Commonwealth need not prove, or even allege, which specific crime the defendant intended to commit. *See Commonwealth v. Alston*, 651 A.2d 1092, 1095 (Pa. 1994). Instead, the Commonwealth need only prove a general criminal intent. *Id*.

Moreover, "[t]he specific intent to commit a crime necessary to establish the intent element of burglary may be found in a defendant's words or conduct, or from the attendant circumstances together with all reasonable inferences therefrom." ***Commonwealth v. Eck***, 654 A.2d 1104, 1108-09 (Pa. Super. 1995). "Once [a defendant] has entered the private residence by criminal means we can infer that he intended a criminal purpose based upon the totality of the circumstances." ***Commonwealth v. Alston***, 651 A.2d 1092, 1095 (Pa. 1994).

Porter argues that the Commonwealth failed to prove the requisite element of intent by proving that Porter specifically intended to commit a crime inside the structure at the time he entered Ms. Fillman's apartment. Porter claims that he was in Ms. Fillman's apartment for more than an hour, and made no move to harm her until the conclusion of this time period. Porter argues that his initial intent was to speak with Ms. Fillman. He claims that he was at first weepy and conversational, but later moved to pacing and got access to a knife as his agitation escalated. Porter points out that the person to whom he directed the knife was himself, and Ms. Fillman tended to his self-inflicted wound by placing a towel around it. Porter asserts that it was only after these events that he harmed Ms. Fillman. Porter concedes that the evidence was sufficient to establish that he committed criminal trespass and other offenses, but claims that it was insufficient to establish that he entered the apartment with a contemporaneous intent to commit a crime.

The trial court considered Porter's sufficiency challenge and concluded that it lacked merit. The court reasoned as follows:

Instantly, on May 14, 2017, leading up to the time of the incident, [Porter] sent [Ms.] Fillman multiple text messages in which he repeatedly asked to see her so she could get back with him. [Porter] also accused Ms. Fillman of ignoring him and threatened violence against himself. [Porter] called Ms. Fillman at 6:30 p.m. and pleaded to see her and requested her to come and pick him up. Ms. Fillman refused and did not give [Porter] permission to come to her home. [Porter] proceeded to call Ms. Fillman approximately twenty (20) additional times before she went to bed. Ms. Fillman went to bed around 10:00 p.m. and put her phone in silent mode. [Porter] continued to contact Ms. Fillman and the call log later revealed he had called her forty-seven (47) times in total on May 14, 2017.

Ms. Fillman awoke from her sleep after hearing a sound of a crash from the window in her living room. Ms. Fillman subsequently went to the doorway of her bedroom and saw [Porter] standing inside the living room in front of a broken window. Ms. Fillman surmised [Porter] had broken into her third floor apartment by climbing the fire escape and breaking the window. Ms. Fillman asked [Porter] why he was inside her apartment and asked him to leave. [Porter] pled with her to stay and repeatedly asked her why she didn't love him anymore. Ms. Fillman attempted to open the door to leave the apartment but [Porter] pushed it shut. [Porter] stated that if Ms. Fillman won't be with him, he was going to kill himself in front of her. [Porter] subsequently went to the kitchen and grabbed a knife which he used to stab himself in the left forearm. Ms. Fillman grabbed a towel, applied pressure to [Porter's] arm and took control of the knife. Ms. Fillman attempted run but [Porter] blocked the door so she could not open it and pushed her to the floor. [Porter] subsequently rubbed blood all over himself and leaned over so it would drip on Ms. Fillman. [Porter] began to pace back and forth away from Ms. Fillman, and she used this opportunity to exit the apartment.

Ms. Fillman fled towards a flight of stairs in the hallway outside but [Porter] pushed her down the steps which caused her to strike her face and knee at the bottom of the stairs. Ms. Fillman attempted to run into an alleyway but [Porter] placed her in a

- 19 -

chokehold and placed a hand over her nose and mouth. [Porter] eventually ran away and Ms. Fillman was able to exit the apartment building and run to a nearby police station parking lot where she called 911 with her cell phone.

Under the totality of the circumstances and viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the evidence was sufficient to establish that [Porter] entered Ms. Fillman's residence with the intent to commit a crime. . . .The tone of [Porter's] messages leading up to the incident, the overwhelming amount of phone calls, and [Porter's] acts of climbing the fire escape, breaking a window and subsequently assaulting Ms. Fill[man] all give rise to the inference that Porter had a contemporaneous criminal purpose when he entered the residence.

Trial Court Opinion, 1/8/20, at 8, 9 (citations to the record omitted).

Upon review of the record, we discern no error in the trial court's conclusion that the Commonwealth sustained its burden of proving beyond a reasonable doubt the intent element of burglary. The record indicates that Porter refused to accept that Ms. Fillman did not want to speak with him over the phone or in person, and continued to call her forty-seven times before he formed an intent to break into her apartment. Porter thereafter climbed the fire escape to the third floor of Ms. Fillman's apartment building, and forcibly broke into the home by breaking a window and climbing in. He thereafter cut himself with a knife, blocked a door when Ms. Fillman tried to escape from him, pushed her down, and then dripped his blood over her. When Ms. Fillman again tried to escape from Porter, he pushed her down a flight of stairs and thereafter tried to choke her. The totality of these circumstances supports a reasonable inference, if believed by the jury, that Porter entered Ms. Fillman's

residence with intent to commit a crime therein. Exercising its prerogative as the factfinder, the jury chose to accept this inference as true. We may not substitute our judgment for the jury's. *See Commonwealth v. Sanchez*, 82 A.3d 943, 972 (Pa. 2013). Accordingly, Porter's sufficiency claim warrants no relief.

In his final issue, Porter contends that the trial court erred in ordering Porter to pay the costs of prosecution as part of his sentence. Because Porter's claim challenges the sentencing court's authority to impose costs as part of its sentencing order, it implicates the legality of his sentence. *See Commonwealth v. Lehman*, 201 A.3d 1279, 1283 (Pa. Super. 2019), *appeal granted*, 215 A.3d 967 (Pa. 2019).[5] "Our standard of review over such questions is *de novo* and our scope of review is plenary." *Commonwealth v. White*, 193 A.3d 977, 985 (Pa. Super. 2018) (citing *Commonwealth v. Cardwell*, 105 A.3d 748, 750 (Pa. Super. 2014)).

The Judiciary Code requires a trial court to order a convicted defendant to pay costs pursuant to 42 Pa.C.S.A. § 9721(c.1), which provides:

> Mandatory payment of costs.—Notwithstanding the provisions of section 9728 (relating to collection of restitution, reparation, fees, costs, fines and penalties) or any provision of law

---

[5] Our Supreme Court granted review of this Court's decision in *Lehman* to determine "Whether the Pennsylvania Superior Court erred as a matter of law by holding that the costs relating to contested expert testimony in a contested resentencing do not constitute costs of prosecution under 16 P.S. § 1403[] and are ineligible for imposition upon a defendant reimbursement as part of a sentence as a matter of law rather than the sentencing court's discretion[?]" *Lehman*, 215 A.3d at 967.

to the contrary, in addition to the alternatives set forth in subsection (a), **the court shall order the defendant to pay costs**. In the event the court fails to issue an order for costs pursuant to section 9728, **costs shall be imposed upon the defendant under this section. No court order shall be necessary for the defendant to incur liability for costs under this section**. The provisions of this subsection do not alter the court's discretion under Pa.R.Crim.P. 706(C) (relating to fines or costs).

42 Pa.C.S.A. § 9721(c.1) (emphases added).

Rule 706 of the Pennsylvania Rules of Criminal Procedure require a trial court to determine a defendant's ability to pay costs or fines before incarcerating a defendant for non-payment. The Rule provides:

(A) A court shall not commit the defendant to prison for failure to pay a fine or costs unless it appears after hearing that the defendant is financially able to pay the fine or costs.

(B) When the court determines, after hearing, that the defendant is without the financial means to pay the fine or costs immediately or in a single remittance, the court may provide for payment of the fines or costs in such installments and over such period of time as it deems to be just and practicable, taking into account the financial resources of the defendant and the nature of the burden its payments will impose, as set forth in paragraph (D) below.

(C) The court, in determining the amount and method of payment of a fine or costs shall, insofar as is just and practicable, consider the burden upon the defendant by reason of the defendant's financial means, including the defendant's ability to make restitution or reparations.

(D) In cases in which the court has ordered payment of a fine or costs in installments, the defendant may request a rehearing on the payment schedule when the defendant is in default of a payment or when the defendant advises the court that such default is imminent. At such hearing, the burden shall be on the defendant to prove that his or her financial condition has deteriorated to the extent that the defendant is without the means to meet the payment schedule. Thereupon the court may extend

or accelerate the payment schedule or leave it unaltered, as the court finds to be just and practicable under the circumstances of record. When there has been default and the court finds the defendant is not indigent, the court may impose imprisonment as provided by law for nonpayment.

Pa. R. Crim. P. 706.

Porter contends that Pennsylvania statutes and the Rules of Criminal Procedure require that the sentencing court consider a defendant's ability to pay prior to imposing costs and that such costs should be waived where a client is indigent. Porter points to Rule 706(C), and argues that this provision requires a court to determine the defendant's ability to pay costs at the time of sentencing.

In support of his argument, Porter relies on cases involving the imposition of *fines* rather than the costs of prosecution. *See Commonwealth v. Martin*, 335 A.2d 424 (Pa. Super. 1975) (interpreting Pa.R.Crim.P. 1407, and finding a $5,000 fine excessive where defendant was declared indigent); *Commonwealth v. Mead*, 446 A.2d 971 (Pa. Super. 1982) (interpreting 42 Pa.C.S.A. § 9726(c), and vacating $5,000 fine imposed where court did not determine defendant's ability to pay).

Porter points to this Court's decisions in *Commonwealth v. Hernandez*, 917 A.2d 332 (Pa. Super. 2007); and *Commonwealth v. Childs*, 63 A.3d 323 (Pa. Super. 2013), wherein this Court determined that Rule 706 requires only that the sentencing court determine the defendant's

ability to pay costs before ordering incarceration of the defendant for non-payment of costs. In *Childs*, we explained

> Generally, a defendant is not entitled to a pre-sentencing hearing on his or her ability to pay costs. *Commonwealth v. Hernandez*, . . . 917 A.2d 332, 336-37 (Pa. Super. 2007). While Rule 706 "permits a defendant to demonstrate financial inability either after a default hearing or when costs are initially ordered to be paid in installments," the Rule only *requires* such a hearing prior to any order directing incarceration for failure to pay the ordered costs. *Id*. at 337 (emphasis added). In *Hernandez*, we were required to determine whether Rule 706 was constitutional in light of *Fuller v. Oregon*, 417 U.S. 40, 94 S. Ct. 2116, 40 L. Ed. 2d 642 (1974). We concluded that a hearing on ability to pay is not required at the time that costs are imposed:
>
>> The Supreme Court . . . did not state that *Fuller* requires a trial court to assess the defendant's financial ability to make payment at the time of sentencing. In interpreting *Fuller*, numerous federal and state jurisdictions have held that it is not constitutionally necessary to have a determination of the defendant's ability to pay prior to or at the judgment of sentence. . . . [We] conclude that *Fuller* compels a trial court only to make a determination of an indigent defendant's ability to render payment before he/she is committed.
>
> *Hernandez*, 917 A.2d at 337.

*Childs*, 63 A.3d at 326. Porter dismisses our ruling in *Hernandez* as "flawed dicta," and our ruling in *Childs* as "misguided repetition of dicta." Porter's Brief at 41.

Porter also points to our Supreme Court's decision in *Commonwealth v. Ford*, 217 A.3d 824 (Pa. Super. 2019), which addressed whether the ability-to-pay prerequisite is satisfied when a defendant agrees to pay a given fine as part of a negotiated guilty plea agreement. In a footnote, our High

Court cited to Rule 706 and reiterated that "[a]lthough a presentence ability-to-pay hearing is not required when **costs** alone are imposed, our Rules of Criminal Procedure provide that a defendant cannot be committed to prison for failure to pay a fine or costs unless the court first determines that he or she has the financial means to pay the fine or costs. Pa.R.Crim.P. 760(A)." **Id**. at 827 n.6.

Porter dismisses this statement in **Ford** as "non-binding dicta" and "an unfortunate comment on an issue that was not essential to the case." Porter's Brief at 42. Porter argues that **Ford** did not reach the issue of costs, nor did it include any analysis of Rule 706(C) in relation to 42 Pa.C.S.A. §§ 9721(c.1) and 9728(b.2).[6] Porter contends that those statutes demonstrate that sentencing courts retain discretion to waive costs at sentencing as provided by Rule 706(C).

We are not persuaded by Porter's argument. Rule 706(C) does not provide a timeframe in which an ability-to-pay determination must be made, let alone specify that such a determination must be made at the time of

_____

[6] Section 9728(b.2) provides as follows: "The clerk of courts, in consultation with other appropriate governmental agencies, may transmit to the prothonotary of the respective county certified copies of all judgments for restitution, reparation, fees, costs, fines and penalties which, in the aggregate, do not exceed $ 1,000, and, if so transmitted, it shall be the duty of each prothonotary to enter and docket the same of record in his office and to index the same as judgments are indexed, without requiring the payment of costs as a condition precedent to the entry thereof." 42 Pa.C.S.A. § 9728(b.2).

sentencing. Instead, the timing for such a determination is set forth in Rule 706(A), which requires the determination to be made before the court may "commit the defendant to prison for failure to pay a fine or costs." Pa.R.Crim.P. 706(A).

Here, Porter is not being incarcerated due to his ability, or lack thereof, to pay the costs of prosecution imposed at his sentencing. Because our appellate courts do not require a sentencing court to hold an ability-to-pay hearing prior to the imposition of costs, the trial court did not err by failing to conduct a hearing to determine Porter's ability to pay the costs of prosecution. Accordingly, Porter's final issue entitles him to no relief.

Judgment of sentence affirmed.

Judge Murray joins the memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2021