J-A01014-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HARRY JAMES JOHNSON | : | |
| | : | |
| Appellant | : | No. 3081 EDA 2019 |

Appeal from the Judgment of Sentence Entered October 11, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0003149-2018

BEFORE:   BENDER, P.J.E., OLSON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED:  APRIL 16, 2021**

Appellant, Harry James Johnson, appeals from the judgment of sentence of 4½ to 9 years' incarceration, followed by 5 years' probation, imposed after he was convicted of possession of a firearm by a person prohibited under 18 Pa.C.S. § 6105(a)(1).  On appeal, Appellant contends that the evidence was insufficient to sustain his conviction, and that the court erred by directing him to pay the costs of prosecution and a monthly supervision fee, without considering his ability to pay.  We affirm.

The court summarized the facts and procedural history of Appellant's case, as follows:

> **A. Factual History**
>
> At approximately 1:00 [a.m.], on Saturday, April 28, 2018, the Whitpain Township Police Department received a call for shots

_____

[*] Retired Senior Judge assigned to the Superior Court.

J-A01014-21

fired into the air by a black male, identified as "Harry Jr.," wearing sunglasses and carrying a cane, in the parking lot of the Daniel Dowling American Legion Post located at 351 Maple Avenue, Whitpain Township, Montgomery County, Pennsylvania. As Officer Matthew Bealer ("Ofc. Bealer") of the Whitpain Township Police Department responded immediately to the scene to investigate, the caller reported that the suspect had fled in an unknown vehicle toward Norristown. Upon arriving in the parking lot, Ofc. Bealer located several remaining individuals "milling around," none of whom wished to provide information pertaining to the investigation. On the west side of the building, Ofc. Bealer … located a spent .22 shell casing, consistent with having previously been a live round fired from a semi-automatic pistol. Ofc. Bealer described the shell casing he located as "clean" and untarnished, indicating to him that it had only "recently been deposited there." Video surveillance of the underlying incident corroborated the caller's rendition of events, including the black male pointing a gun into the air over his head several times, and at least one (1) visible muzzle flash. Upon inquiry, Floyd Rudd, the Legion bar manager, readily identified the shooter as "Harry Johnson," whom he believed to be residing in the Pottstown area. A prior convicted felon, [Appellant], whom Ofc. Bealer also recognized by virtue of past contact, is not permitted to possess firearms. The following day, after determining that the lone vehicle visible on the second exterior video clip, a dark-colored (2001 Mercedes) station wagon bearing PA registration KMZ-4879, was registered to [Appellant], Ofc. Bealer obtained an arrest warrant and apprehended [Appellant]. The weapon, however, was never recovered.

**B. Procedural History**

The Commonwealth ultimately charged [Appellant] with the following on Bill of Information 3149-18: Count One (Persons Not to Possess (F1)) and Count Two (Recklessly Endangering Another ("REAP")). On June 24, 2019, the Commonwealth proceeded only as to Count One to a one-day bench trial after which the [c]ourt found [Appellant] guilty. Given the ten (10) to twenty (20) year standard range sentencing guideline attributable to [Appellant's] extensive criminal history, the [c]ourt did not immediately proceed to sentencing. On October 11, 2019, after a thorough review of both the Presentence Investigation (PSI) report and Probation and Parole Intervention Evaluation (PPI), the [c]ourt []deviated downward from the guideline, and[] sentenced [Appellant] to imprisonment of not less than four and a half (4½) years, nor more than nine (9) years, concurrent to all previously

imposed sentences, followed by five (5) years of probation to run consecutive to the prison term. The [c]ourt further imposed payment of the "costs of prosecution" to be paid after his release, in monthly installments during the period of his supervision, as well as payment of a monthly supervision fee. At sentencing[,] [Appellant] did not assert any timely objection to the imposition of either the costs of prosecution or the costs of supervision, nor did [Appellant] request a hearing as to his ability to pay said costs. On October 24, 2019, [Appellant] timely filed a *pro se* Notice of Appeal challenging the sentence imposed on October 11, 2019.

Trial Court Opinion (TCO), 4/27/20, at 1-3 (footnotes omitted).

After Appellant filed the *pro se* notice of appeal, his counsel filed a petition to withdraw. The trial court granted that petition, and scheduled a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), to discern if Appellant was voluntarily, knowingly, and intelligently waiving his right to counsel. However, prior to the **Grazier** hearing, Appellant informed the court that he wished to be represented, and new counsel was appointed. The court then issued an order directing Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant timely complied. The trial court filed its Rule 1925(a) opinion on April 27, 2020.

Herein, Appellant states two issues for our review:

1. Was [the] evidence sufficient to establish that Appellant possessed a firearm in violation of 18 Pa.C.S. § 6105(a)?

2. Did the sentencing court err in imposing costs and supervision fees absent consideration of [Appellant's] ability to pay?

Appellant's Brief at 2 (corrected numbering).

Appellant first challenges the sufficiency of the evidence to sustain his conviction. We have explained that,

- 3 -

[i]n reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. **Commonwealth v. Moreno,** 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. **Commonwealth v. Hartzell,** 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. **Moreno, supra** at 136.

**Commonwealth v. Koch**, 39 A.3d 996, 1001 (Pa. Super. 2011).

Here, Appellant contends that the Commonwealth failed to establish that he possessed a firearm, which is defined in section 6105 as follows: "As used in this section only, the term 'firearm' shall include any weapons which are designed to or may readily be converted to **expel any projectile** by the action of an explosive or the frame or receiver of any such weapon." 18 Pa.C.S. § 6105(i) (emphasis added). Appellant claims that "[t]he video evidence showed a flash that was consistent with those that occur when a gun is fired, but that was also consistent with those that occur when a starter pistol is fired."[1] Appellant's Brief at 7-8. Noting that "[t]he Commonwealth's firearms expert testified that starter pistols are not designed to expel projectiles[,]" Appellant concludes that "starter pistols are not firearms." **Id.** at 8 (citation to the record omitted). Appellant also contends that the fact that a bullet

_____

[1] At trial, the Commonwealth presented evidence that a starter pistol is "a blank gun" that is "not designed to expel a projectile, which means a bullet is not supposed to travel down the barrel on its way to its target. They can be used for props, noise makers, starting races, things of that nature." N.T. Trial, 6/24/19, at 46-47.

- 4 -

casing was found on the ground did not establish his possession of a firearm, where it could not be determined how long the casing had been there. Appellant also points out that there were reports that **multiple** shots had been fired, yet only one casing was found. For these reasons, he insists that it was as equally reasonable to infer that he possessed a starter pistol as it was to infer that he possessed a gun, making the evidence insufficient to sustain his section 6105 conviction. ***Id.*** at 9 (citing ***In Interest of J.B.***, 189 A.3d 390, 412 (Pa. 2018) ("When two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances, a [finder of fact] must not be permitted to guess which inference it will adopt, especially when one of the two guesses may result in depriving a defendant of his life or his liberty.") (citation omitted)).

The trial court concluded that Appellant's argument was "thoroughly debunked by the Commonwealth's evidence." TCO at 5. It explained:

> The video surveillance captured [Appellant] raising his arm in the air, and then[,] when nothing happens, lowering his weapon, cocking it, loading a bullet in the chamber, firing, and racking the slide one more time to expel the spent shell casing. As credibly testified to by firearms expert, Detective Eric Nelson ("Det. Nelson") of the Montgomery County District Attorney's Office, these actions are totally consistent with the use of a firearm used to expel a projectile:
>
> > Prosecutor: All right. I'm going to show you what's already been admitted into evidence as C-8. It's Camera 14. And I'm going to start playing this – I'm going to bring it back a little bit. This is 0015 and 14 seconds into the video. I'm going to pause it there. Did you see what you recognize to be motions consistent with firearm usage on video?

> Det. Nelson: Yes. The person that's on the scene there in this video, a few seconds prior to where you stopped it, has that right hand extended and the arm, where it appears to - where you see a flash, which could be consistent with a muzzle flash of a firearm going off. After that flash, he walks forward, and the left hand appears to grab the object with the right hand, which could be consistent with a pistol and racking the slide.

*Id.* at 5-6 (footnote omitted; quoting N.T. Trial, 6/24/19, at 42-43).

In addition, the court concluded that Detective Nelson "credibly testified that the shell casing found on the scene was that from live ammunition and not a starter pistol…[.]" *Id.* at 6 (footnote omitted). The court stressed that "the spent casing [was] recovered … in the precise location [Appellant] is observed standing in the video," and "it was notably free of any indication of 'verdigris,' *i.e.*[,] copper oxidation or any sign indicating it had been there for some time." *Id.* at 8. The court further observed that there had been no "other contemporaneous reports of weapons being fired in this vicinity to provide alternate explanation or basis for the presence of this particular spent shell casing." *Id.* at 9. "Based on this ample, credible evidence set forth by the Commonwealth, as well as the reasonable inferences drawn from that evidence in the light most favorable to it, including but not limited to [the] video surveillance capturing [Appellant's] attempting to fire, reloading and racking his weapon[, and] then firing, as well as the spent straight, round, untarnished shell casing, consistent with having previously been the shell casing of live ammunition, expelled from a semiautomatic pistol," the court found that there was "more than sufficient" evidence to sustain its verdict.

*Id.* (citations omitted). We agree. Accordingly, Appellant's first issue does not warrant relief.

Next, Appellant claims that the sentencing court erred by imposing the costs of prosecution and supervision fees, without first considering his ability to pay. Appellant argues that "[b]ecause the sentencing court did not make an ability-to-pay determination, the assignment of costs was an illegal sentence and should be vacated." Appellant's Brief at 14.

Initially, the trial court erroneously deemed this claim waived because Appellant failed to raise it at sentencing or in a post-sentence motion. *See* TCO at 10. Appellant is challenging the authority of the court to impose the costs of prosecution without first determining his ability to pay. We have previously deemed this claim as a challenge to the legality of a sentence. *Commonwealth v. Childs*, 63 A.3d 323, 325 (Pa. Super. 2013) (finding that Childs' argument that the court erred in imposing costs without considering his ability to pay was a challenge to the authority of the court to impose the costs, thereby implicating the legality of Childs' sentence) (citation omitted).[2]

_____

[2] We note that our Court has indicated that an appellant can waive a claim that the trial court erred by refusing to waive probation supervision fees. *See Commonwealth v. Lopez*, 2021 WL 1096376, *5 (Pa. Super. Mar. 23, 2021) (*en banc*). Here, while Appellant mentions his probation supervision fees, he focuses his argument on the imposition of costs, and provides no separate discussion of why the court erred by imposing supervision fees. *See* Appellant's Brief at 14 (declaring that "the assignment of **costs** was an illegal sentence and should be vacated") (emphasis added); *id.* at 15 (requesting we "remand for a determination on **costs** taking into account his ability to pay") (emphasis added). Thus, we do not consider Appellant's issue as including a challenge to his supervision fees.

Accordingly, Appellant's sentencing issue is non-waivable. ***Commonwealth v. Robinson***, 931 A.2d 15, 19-20 (Pa. Super. 2007) ("A challenge to the legality of the sentence may be raised as a matter of right, is non-waivable, and may be entertained so long as the reviewing court has jurisdiction."). "A claim that the trial court erroneously imposed an illegal sentence is a question of law and, as such, our scope of review is plenary and our standard of review is *de novo*." ***Childs***, 63 A.3d at 325 (citation omitted).

Appellant states that he was "wrongly ordered to pay the costs of prosecution and supervision fees as part of his sentence." Appellant's Brief at 10. He argues that the sentencing court should have considered his ability to pay before imposing such costs, but that it failed to inquire about his financial situation. ***Id.*** at 11. In support of this argument, Appellant relies on Pa.R.Crim.P. 706(C), which provides that the court, "in determining the amount and method of payment of a fine or costs **shall**, insofar as is just and practicable, consider the burden upon the defendant by reason of the defendant's financial means…." ***Id.*** (quoting Rule 706(C)) (emphasis added). Appellant asserts that this provision applies at sentencing. ***Id.*** (citing ***Commonwealth v. Martin***, 335 A.2d 424 (Pa. Super. 1975) (*en banc*) (invalidating the imposition of a fine where the trial court did not determine the ability to pay under Rule 706 (then Rule 1407))). Because the sentencing court did not make an ability-to-pay determination in this matter, Appellant concludes that the assignment of costs is an illegal sentence and should be vacated. ***Id.*** at 14.

Contrarily, the trial court opined:

Rule 706(C) … must be read in context with its counterpart[,] Rule 706(A)[,] which provides:

> A court shall not commit the defendant to prison for failure to pay a fine or costs unless it appears after hearing that the defendant is financially able to pay the fine or costs.

Read[ing Rules 706(C) and (A)] together, the Superior Court has consistently held that indigency does not preclude imposition of costs at sentencing, and an ability to pay hearing need only occur prior to committing a defendant to prison for failure to pay costs. [Appellant's] claims here are directly controlled by … **Childs** … and **Commonwealth v. Hernandez**, 917 A.2d 332, 337 (Pa. Super. [] 2007)…. In **Childs**, after convicting [Childs] of burglary and conspiracy, and sentencing him to approximately eleven and a half (11½) to twenty-three (23) months of incarceration, the [c]ourt ordered him to pay $1,645.00 in restitution, $2,100.00 in probation supervision fees, and $1,213.82 in other costs. [Childs] appealed the denial of his post-sentence motions seeking, among other items, a reduction or waiver of the costs, alleging that the imposition of costs was illegal because the trial court failed to hold a hearing on his ability to pay such costs. On appeal, the Superior Court easily dispensed with [Childs'] costs claim, as follows:

> Pursuant to 18 P.S. § 11.1102(c), the court "shall" impose upon a defendant the cost of monthly supervision while on parole, "unless the court finds that the fee should be reduced, waived or deferred based on the offender's present inability to pay." 18 P.S. § 11.1102(c). Similarly, a defendant is liable for the costs of his or her prosecution unless the trial court determines otherwise pursuant to Pa.R.Crim.P. 706(c). 42 Pa.C.S.[] §§ 9728(b.2), 9721(c.1).
>
> ***
>
> Generally, a defendant is not entitled to a pre-sentencing hearing on his or her ability to pay costs. … **Hernandez**, 917 A.2d [at] 336–37…. While Rule 706 "**permits** a defendant to demonstrate financial inability either after a default hearing or when costs are initially ordered to be paid in installments," the Rule only **requires** such a hearing prior to any order directing incarceration for failure to pay the ordered costs. **Id.** at 337

(emphasis added). In **Hernandez**, we were required to determine whether Rule 706 was constitutional in light of **Fuller v. Oregon**, 417 U.S. 40 … (1974). We concluded that a hearing on ability to pay is not required at the time that costs are imposed:

> The Supreme Court ... did not state that **Fuller** requires a trial court to assess the defendant's financial ability to make payment at the time of sentencing. In interpreting **Fuller**, numerous federal and state jurisdictions have held that it is not constitutionally necessary to have a determination of the defendant's ability to pay prior to or at the judgment of sentence…. [We] conclude that **Fuller** compels a trial court only to make a determination of an indigent defendant's ability to render payment before he/she is committed.

**Hernandez**, 917 A.2d at 337. Accordingly, the trial court did not err in denying [Childs] a hearing on his ability to pay costs. In the event that [Childs] fails to make payment as ordered, the trial court will be required to hold a hearing on [his] ability to pay.

**Childs**, [63 A.3d] at 326.

In this case, neither of [Appellant's] claims as to the [c]ourt's imposition of costs are ripe for review. More specifically, [Appellant] has failed to demonstrate … that he is facing imprisonment for failure to pay … costs[, a] condition[] precedent to his instant costs claim. As such, [Appellant] is not presently entitled to relief.

TCO at 11-12.

Appellant attacks the trial court's ruling, arguing that **Hernandez** and **Childs** wrongly determined that Rule 706 does not apply at sentencing, ignoring the *en banc* precedent of **Martin**, as well as the plain text of Rule 706(C). Appellant's Brief at 12. We disagree.

This very issue of the legality of imposition of mandatory costs at sentencing, without first holding an ability-to-pay hearing, was recently

- 10 -

decided by an *en banc* panel of this Court in *Lopez*. There, the defendant similarly appealed from a judgment of sentence, which included the imposition of mandatory court costs. Lopez argued that he was entitled to a hearing under Rule 706(C) to determine his ability to pay those court costs before the court imposed them at sentencing. The *Lopez* Court held that "while a trial court has the discretion to hold an ability-to-pay hearing at sentencing, Rule 706(C) only requires the court to hold such a hearing when a defendant faces incarceration for failure to pay court costs previously imposed on him." *Lopez*, 2021 WL 1096376 at *1.

The *Lopez* Court expressly rejected the argument that Section C can be read in isolation from the rest of Rule 706, noting that it is critical to look at the Rule in its entirety. *Id.* at *2. To that end, Rule 706 provides:

(A)   A court shall not commit the defendant to prison for failure to pay a fine or costs unless it appears after hearing that the defendant is financially able to pay the fine or costs.

(B)   When the court determines, after hearing, that the defendant is without the financial means to pay the fine or costs immediately or in a single remittance, the court may provide for payment of the fines or costs in such installments and over such period of time as it deems to be just and practicable, taking into account the financial resources of the defendant and the nature of the burden its payments will impose, as set forth in paragraph (D) below.

(C)   The court, in determining the amount and method of payment of a fine or costs shall, insofar as is just and practicable, consider the burden upon the defendant by reason of the defendant's financial means, including the defendant's ability to make restitution or reparations.

(D)   In cases in which the court has ordered payment of a fine or costs in installments, the defendant may request a

> rehearing on the payment schedule when the defendant is in default of a payment or when the defendant advises the court that such default is imminent. At such hearing, the burden shall be on the defendant to prove that his or her financial condition has deteriorated to the extent that the defendant is without the means to meet the payment schedule. Thereupon the court may extend or accelerate the payment schedule or leave it unaltered, as the court finds to be just and practicable under the circumstances of record. When there has been default and the court finds the defendant is not indigent, the court may impose imprisonment as provided by law for nonpayment.

Pa.R.Crim.P. 706. "When the sections of Rule 706 are read sequentially and as a whole, as the rules of statutory construction direct, it becomes clear that Section C only requires a trial court to determine a defendant's ability to pay at a hearing that occurs prior to incarceration, as referenced in Sections A and B." *Lopez* at \*2.

Lopez further argued, as does Appellant, that the trial court's reliance on *Childs* was improper because it is inconsistent with this Court's decision in *Martin*. The *Lopez* Court rejected this argument because *Martin* solely addressed the issue of whether the trial court could impose a **fine** without considering the ability to pay, and reaffirmed the *Childs* Court's holding that a defendant is not entitled to an ability-to-pay hearing before a court imposes court **costs** at sentencing. *Id.* at \*5. The *Lopez* Court added:

> To be clear, nothing in this opinion is meant to strip the trial court of its ability to exercise its discretion to conduct such a hearing at sentencing. There is no doubt that it is the trial court, and not this Court, which is in the best position to evaluate its own docket and schedule this hearing. We merely hold that nothing in the Rules of Criminal Procedure, the Sentencing Code[,] or established case law takes that discretion away from the trial court unless and until a defendant is in peril of going to prison for failing

- 12 -

to pay the costs imposed on him. It is only at that point that the mandate for an ability-to-pay hearing arises. Because [the appellant] had not yet been threatened with incarceration as a result of a default, we hold that the trial court did not err by imposing mandatory court costs upon [him] without first holding an ability-to-pay hearing.

*Id.*

Here, Appellant has only been sentenced to pay the costs of prosecution. He is not facing incarceration for failure to pay those costs. Accordingly, we uphold the trial court's determination that he was not entitled to an ability-to-pay hearing.

Judgment of sentence affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/16/21

- 13 -