J-S50005-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ASHLEY ESTHER LEISTER | : | |
| | : | |
| Appellant | : | No. 2717 EDA 2019 |

Appeal from the Judgment of Sentence Entered August 20, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0001257-2019

BEFORE:   BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED APRIL 20, 2021**

Appellant, Ashley Esther Leister ("Leister"), appeals from the judgment

of sentence of an aggregate term of 72 hours to 6 months' imprisonment,

imposed after she was convicted of three counts of driving under the influence

of a controlled substance.[1]   Appellant challenges the sufficiency of the

evidence to sustain her convictions and the imposition of prosecution costs at

sentencing.  We affirm.

The trial court provided the following factual summary in its Pa.R.A.P.

1925(a) opinion:

> On November 24, 2018[,] at approximately 8:20 p.m.,
> Leister was observed walking through Wawa, a convenience store,
> located at 145 West DeKalb Pike, Upper Merion, Montgomery
> County.  Robert Dubuc, a manager at Wawa, testified that Leister

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3802(d)(1)(ii), (d)(1)(iii), (d)(2).

appeared to be intoxicated while in the store. Mr. Dubuc testified that he saw her exit the store and approach the driver's side of her car. Because she appeared to be intoxicated, Mr. Dubuc directed Leister towards the passenger door and into the passenger's seat. Mr. Dubuc started her car, since it was cold outside. He then called [the] police.

Officer Brian Manion of the Upper Merion Police Department responded to the scene. Upon arriving at the scene, Leister was in the front passenger seat. She appeared to have glassy and bloodshot eyes. When he spoke with Leister, she slurred her speech, nodding in and out during their conversation. She also seemed confused. The officer testified that based upon these observations[,] Leister appeared to be intoxicated. Leister told him that she drove to Wawa.

Officer Manion asked Leister to step out of her car and to consent to a field sobriety test, which she did. The officer administered the one leg stand and balance test, the alphabet test, and the step-walk-and-turn test. Her performance on these tests coupled with her glassy eyes, slurred speech, confusion and falling asleep, indicated to the officer that her ability to safely drive her car was impaired and that she would be a danger on the road. Leister was taken into custody on suspicion of DUI. The officer read the DL-26 form to Leister, and then transported her to Suburban Community Hospital for a blood draw.

A[ National Medical Services ("NMS")] lab report was generated analyzing the blood draw. According to the NMS report, there was a presence of amphetamine, methamphetamine, Clonazepam, 7-Amino Clonazepam, and Oxycodone-Free in Leister's blood. The report listed Oxycodone as a DEA Schedule II drug.

Trial Court Opinion ("TCO"), 11/27/19, at 1-2 (citations to record omitted).

Based on the evidence presented at a bench trial on August 20, 2019, Leister was found guilty of the aforementioned offenses and was sentenced to 72 hours to 6 months' imprisonment. She was also ordered to pay the costs of prosecution and a $1,000 fine. Leister filed a post-sentence motion, which was denied by the trial court on August 26, 2019. On September 13, 2019,

she filed a timely notice of appeal, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Herein, Leister presents the following issues for our review:

1. Was there sufficient evidence to convict … Leister of driving under the influence when she was seen leaving a store on foot, appearing intoxicated, and then rested in the passenger seat of a parked vehicle?

2. Did the sentencing court err in imposing costs and a supervision fee without taking into consideration … Leister's ability to pay?

Leister's Brief at viii.

First, Leister challenges the sufficiency of the evidence to support her convictions. The standard of review of a sufficiency claim is well-established:

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Koch*, 39, A.3d 996, 1001 (Pa. Super. 2011) (citations omitted).

Specifically, Leister argues that "[o]bservations of an inebriated person returning to the passenger side of a parked car are insufficient evidence on which to sustain driving under the influence convictions." Leister's Brief at 5. She contends that the Commonwealth's case is "based entirely on the supposition that [she] was inebriated when she first drove her car to Upper Merion and parked near … Wawa[,]" but that all of its evidence pertains to

actions she took when she returned to the car. *Id.* She asserts that no evidence was presented regarding any of her activities prior to the moment she was seen exiting Wawa by foot. *Id.* After careful review, we conclude Leister is not entitled to relief on this claim.

Section 3802 of the Vehicle Code provides, in relevant part:

**(d) Controlled substance.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act;

(ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or

(iii) metabolite of a substance under subparagraph (i) or (ii).

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in the actual physical control of the movement of the vehicle.

75 Pa.C.S. §§ 3802(d)(1) – (d)(2).

Contrary to Leister's claim, the Commonwealth asserts that it proved by the totality of the circumstances that Leister was in actual physical control of her vehicle while intoxicated. Commonwealth's Brief at 6. According to the Commonwealth, the totality of the circumstances includes:

(1) [Leister's] own statement that she drove to … Wawa; (2) the location of the vehicle at … Wawa; (3) multiple failed field sobriety tests; (4) the common sense inference that [Leister] could not have ingested the intoxicants while inside … Wawa because the

degree of her inebriation was so severe as to fail three field sobriety tests; and (5) eyewitness testimony that [Leister] tried to get into the driver's seat.

*Id.* at 6-7 (citations to record omitted) (citing ***Commonwealth v. DiStefano***, 782 A.2d 574, 582 (Pa. Super. 2001) (stating, *inter alia*, that "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence")).

Moreover, Leister does not dispute that she drove her car to Wawa on the night of the incident. Rather, her argument is premised on her assertion that there is no evidence she was inebriated **at the time** she drove, operated, or was in control of the vehicle, because no timeframe was established for when she parked the vehicle at Wawa and/or when she ingested the substances that caused her inebriation. *Id.* at 8. As the Commonwealth points out, this Court has previously determined:

> "The term 'operate' requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion." ***Commonwealth v. Johnson***, 833 A.2d 260, 263 (Pa. Super. 2003). "Our precedent indicates that a combination of the following factors is required in determining whether a person had 'actual physical control' of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle." ***Commonwealth v. Woodruff***, … 668 A.2d 1158, 1161 ([Pa. Super.] 1995). A determination of actual physical control of a vehicle is based upon the totality of the circumstances. [***Commonwealth v.***] ***Williams***, [871 A.2d 254,] 259 [(Pa. Super. 2005)]. "The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor vehicle." ***Johnson***, ***supra*** at 263.

*Commonwealth v. Toland*, 995 A.2d 1242, 1246 (Pa. Super. 2010) (quoting

*Commonwealth v. Brotherson*, 888 A.2d 901, 904-05 (Pa. Super. 2005)).[2]

"In a majority of cases, the suspect location of the vehicle, which supports an

inference that it was driven, is a key factor in a finding of actual control."

*Brotherson*, 888 A.2d at 905 (citing *Commonwealth v. Bobotas*, 588 A.2d

518, 521 (Pa. Super. 1991) (finding actual physical control when the

defendant was found parked in an alley, where he had pulled over on the way

home, with the motor running); *Commonwealth v. Crum*, 523 A.2d 799,

800 (Pa. Super. 1987) (finding actual physical control when the defendant was

found sleeping in his parked car, along the side of the road, with the headlights

on and the motor running)).

Instantly, Leister declares that "[i]t is anyone's guess as to when [she]

parked her car and what she did between the moment she exited the car and

the moment she was seen leaving Wawa on foot." Leister's Brief at 7. She

argues that, "although a fact finder may draw inferences from circumstantial

evidence, a verdict of guilt cannot be based on surmise or conjecture." *Id.*

(citing *Commonwealth v. Stanley*, 309 A.2d 408 (Pa. 1973)). She also cites

---

[2] In **Brotherson**, we analyzed the "actual physical control" component of Section 3731, the predecessor to Section 3802. The Pennsylvania Legislature repealed Section 3731 on September 30, 2003, effective February 1, 2004, and replaced it with Section 3802 of the Vehicle Code. Although levels of impairment were modified in the latter enactment, both statutes provide that a person may not "drive, operate or be in actual physical control of the movement of a vehicle" while under the influence.

to **Commonwealth v. New**, 47 A.2d 450 (Pa. 1946), in which the Court stated:

> When two *equally reasonable* and mutually inconsistent inferences can be drawn from the same set of circumstances, a jury must not be permitted to guess which inference it will adopt, especially when one of the two guesses may result in depriving [the] defendant of his life or his liberty. When a party on whom rests the burden of proof in either a criminal or a civil case, offers evidence consistent with two opposing propositions, he proves neither.

Leister's Brief at 7 (quoting **New**, 47 A.2d at 468; emphasis added). Relying on **New**, Leister poses that the possibility she parked her car and immediately went into Wawa, leaving shortly thereafter, "sits in equipoise with the possibility that she parked and then engaged in other activities during a passage of time before she was seen leaving … Wawa." **Id.** at 8-9. We remain unconvinced that these two scenarios are equally reasonable.

As the trial court opined, "people who drive to Wawa typically purchase something and then drive away. It is not a final destination. It is not a location where amphetamine, clonazepam, 7-Amino Clonazepam, and Oxycodone are purchased over the counter and then used in public." TCO at 5. Given that Leister admitted she drove to Wawa and that she was seen "heavily intoxicated" inside Wawa, suggesting that she had ingested the various substances in her system with sufficient time for them to take effect, it is reasonably inferred that Leister had driven to Wawa while under the influence of the controlled substances. **See Toland**, 995 A.2d at 1246 (where the defendant, as the sole occupant of a vehicle, was found asleep in the driver's

seat with the engine running, while parked in the lot of a store that was not known to sell alcoholic beverages, and appeared visibly intoxicated to the officer after he was awakened, we determined that "a reasonable inference could be made that [the defendant] drove to that location[,]" and concluded that the evidence, while circumstantial, was sufficient for the fact-finder to conclude that the defendant was "in actual physical control of the movement of the motor vehicle" in support of his DUI conviction). ***See also Commonwealth v. Saunders***, 691 A.2d 946, 950 (Pa. Super. 1997), *abrogated on other grounds*, ***Commonwealth v. Dantzler***, 135 A.3d 1109 (Pa. Super. 2016) (determining that the Commonwealth presented sufficient evidence to support an inference that the defendant drove his car while intoxicated where the defendant was found asleep in his car with the motor running, parked in front of a store that did not sell alcoholic beverages, and the defense stipulated that the defendant was intoxicated at the time the officer removed him from the car).

After reviewing the evidence presented in this case, the trial court determined,

> the evidence showed that Leister[,] who was seen heavily intoxicated in the convenience store, had driven to Wawa in her car intoxicated. It was clearly established that she drove herself to Wawa in her car. She was seen intoxicated in Wawa. She drove nowhere else. The observations of the responding officer and the blood draw results also showed that she was heavily intoxicated by various substances…. This [c]ourt as fact-finder considered the totality of the direct evidence and circumstantial evidence presented, and common sense interferences [*sic*] from

> this evidence; and properly inferred that Leister was only at …
> Wawa for a short period of time after driving there while impaired.

TCO at 5. We discern no abuse of discretion or error of law by the trial court.

Next, Leister claims the trial court erred in ordering her to pay costs without first considering her ability to pay, in violation of Pa.R.Crim.P. 706(C). Leister's Brief at 9. This issue implicates the interpretation of the Rules of Criminal Procedure, which presents a question of law. Therefore, our standard of review is *de novo*, and our scope of review is plenary. **See Commonwealth v. Dowling**, 959 A.2d 910, 913 (Pa. 2008).

Leister states that she was "wrongly ordered to pay the costs of prosecution and supervision fees as part of her sentence." Leister's Brief at 9. She argues that the sentencing court should have considered her ability to pay before imposing such costs, but that it failed to inquire about her financial situation. **Id.** at 10.[3] In support of her argument, Leister cites to Pa.R.Crim.P. 706(C), which provides that the court, "in determining the amount and method of payment of a fine or costs *shall*, insofar as is just and practicable, consider the burden upon the defendant by reason of the defendant's financial means…." **Id.** at 9 (quoting Rule 706(C)) (emphasis added). Leister asserts that this provision applies at sentencing. **Id.** (citing **Commonwealth v. Martin**, 335 A.2d 424 (Pa. Super. 1975) (*en banc*) (invalidating the imposition of a fine where the trial court did not determine the ability to pay under Rule 706 (then Rule 1407))). Because the sentencing court did not make an ability-

---

[3] "Leister is indigent and currently receives the services of the public defender." **Id.** at 13.

to-pay determination in this matter, Leister concludes that the assignment of costs was an illegal sentence and should be vacated. *Id.* at 14.

Contrarily, the trial court opined:

There is no requirement in Pennsylvania that a trial court consider a criminal defendant's ability to pay the costs of prosecution and/or fees attendant to that prosecution. *Commonwealth v. Childs*, 63 A.3d 323, 326-27 (Pa. Super. 2013). While Rule 706 "*permits* a defendant to demonstrate financial inability either after a default hearing or when costs are initially ordered to be paid in installments," the Rule only *requires* such a hearing prior to any order directing incarceration for failure to pay the ordered costs. *Commonwealth v. Hernandez*, 917 A.2d 332, 337 (Pa. Super. 2007) (emphasis added); *see also*[] *Childs*, 63 A.3d at 325-26. Therefore, it was not required that this [c]ourt make a finding that Leister had the ability to pay costs before their imposition.

TCO at 7-8 (emphasis in original).

Leister attacks the trial court's ruling, arguing that *Hernandez* and *Childs* wrongly determined that Rule 706 does *not* apply at sentencing, ignoring the *en banc* precedent of *Martin*, as well as the plain text of Rule 706(C). Leister's Brief at 10. The Commonwealth argues, however, that Leister's reliance on *Martin* is misplaced. Commonwealth's Brief at 18. The Commonwealth asserts that *Martin* is distinguishable from this matter, primarily because *Martin* focused on the imposition of *fines*, not mandatory *costs*. *Id.* at 19. "Because *Martin* did not address the issue of costs, it should not be read to extend to costs. Accordingly, the trial court did not err when it imposed costs without first ascertaining [Leister's] ability to pay." *Id.* We agree with the Commonwealth.

In fact, this very issue of the legality of imposition of mandatory costs at sentencing, without first holding an ability-to-pay hearing, was recently decided by an *en banc* panel of this Court in ***Commonwealth v. Lopez***, 2021 WL 1096376 (Pa. Super. Mar. 23, 2021) (*en banc*). There, the defendant similarly appealed from a judgment of sentence, which included the imposition of mandatory court costs. Lopez argued that he was entitled to a hearing under Rule 706(C) to determine his ability to pay those court costs before the court imposed them at sentencing. The ***Lopez*** Court held that "while a trial court has the discretion to hold an ability-to-pay hearing at sentencing, Rule 706(C) only requires the court to hold such a hearing when a defendant faces incarceration for failure to pay court costs previously imposed on him." ***Id.*** at *1.

The ***Lopez*** Court expressly rejected the argument that Section C can be read in isolation from the rest of Rule 706, noting that it is critical to look at the Rule in its entirety. ***Id.*** at *2. To that end, Rule 706 provides:

(A) A court shall not commit the defendant to prison for failure to pay a fine or costs unless it appears after hearing that the defendant is financially able to pay the fine or costs.

(B) When the court determines, after hearing, that the defendant is without the financial means to pay the fine or costs immediately or in a single remittance, the court may provide for payment of the fines or costs in such installments and over such period of time as it deems to be just and practicable, taking into account the financial resources of the defendant and the nature of the burden its payments will impose, as set forth in paragraph (D) below.

(C) The court, in determining the amount and method of payment of a fine or costs shall, insofar as is just and

- 11 -

practicable, consider the burden upon the defendant by reason of the defendant's financial means, including the defendant's ability to make restitution or reparations.

(D) In cases in which the court has ordered payment of a fine or costs in installments, the defendant may request a rehearing on the payment schedule when the defendant is in default of a payment or when the defendant advises the court that such default is imminent.  At such hearing, the burden shall be on the defendant to prove that his or her financial condition has deteriorated to the extent that the defendant is without the means to meet the payment schedule.  Thereupon the court may extend or accelerate the payment schedule or leave it unaltered, as the court finds to be just and practicable under the circumstances of record.  When there has been default and the court finds the defendant is not indigent, the court may impose imprisonment as provided by law for nonpayment.

Pa.R.Crim.P. 706.  "When the sections of Rule 706 are read sequentially and as a whole, as the rules of statutory construction direct, it becomes clear that Section C only requires a trial court to determine a defendant's ability to pay at a hearing that occurs prior to incarceration, as referenced in Sections A and B."  ***Lopez*** at *2.

Lopez further argued, as does Leister, that the trial court's reliance on ***Childs*** was improper because it is inconsistent with this Court's decision in ***Martin***.  The ***Lopez*** Court rejected this argument because ***Martin*** solely addressed the issue of whether the trial court could impose a *fine* without considering the ability to pay, and reaffirmed the ***Childs*** Court's holding that a defendant is not entitled to an ability-to-pay hearing before a court imposes court *costs* at sentencing.  ***Id.*** at *5.  The ***Lopez*** Court added:

To be clear, nothing in this opinion is meant to strip the trial court of its ability to exercise its discretion to conduct such a hearing at

sentencing. There is no doubt that it is the trial court, and not this Court, which is in the best position to evaluate its own docket and schedule this hearing. We merely hold that nothing in the Rules of Criminal Procedure, the Sentencing Code[,] or established case law takes that discretion away from the trial court unless and until a defendant is in peril of going to prison for failing to pay the costs imposed on him. It is only at that point that the mandate for an ability-to-pay hearing arises. Because [the appellant] had not yet been threatened with incarceration as a result of a default, we hold that the trial court did not err by imposing mandatory court costs upon [him] without first holding an ability-to-pay hearing.

*Id.*

Here, Leister has only been sentenced to pay the costs of prosecution. She is not facing incarceration for failure to pay those costs. Accordingly, we uphold the trial court's determination that she was not entitled to an ability-to-pay hearing.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2021

- 13 -